ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

KELSEY C. DAVIDSON (CABN 322323)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6959
    Fax: (415) 436-7027
    kelsey.davidson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> LEION BUTLER, <br>   a/k/a Christopher Butler, <br>   a/k/a Leniyah Butler, <br><br> Defendant. | CASE NO. 23-CR-00449-SI <br><br> **MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION** <br><br> Date: December 6, 2023 <br> Time: 10:30 a.m. <br> Court: Hon. Alex G. Tse |

## I. INTRODUCTION

On December 5, 2023, a federal grand jury in the Northern District of California returned a one-count Indictment charging the defendant, Leion Butler, with one count of second-degree murder in violation of 18 U.S.C. § 1111.  Dkt. 12.  The defendant was previously charged via complaint with violations of 18 U.S.C. §§ 1111 and 2 – Aiding and Abetting Murder.  Dkt. 1.

On November 12, 2023, the defendant shot H.W. (the Victim) in the head after an argument at Crissy Field.  The defendant then took the defendant's car, drove it to Kiska Road, and wiped it down to eliminate her fingerprints and DNA.  The defendant, with the help of her mother, disposed of the Victim's belongings, the blood-stained clothing she was wearing, the purse she was carrying, and her gun. Surveillance video shows the defendant destroying evidence, and cell phone data places the defendant in the location of both the murder and Kiska Road at the relevant times.  The FBI executed a search and arrest warrant at which point the defendant jumped out of a second-story window and fled before she was detained by law enforcement.  After her arrest, the defendant confessed to murdering the Victim.  The defendant is both a significant danger to the community and a flight risk, and there are no conditions or combination of conditions that can secure the defendant's appearance before the Court or provide for the safety of the community.  The government respectfully requests that the Court order the defendant detained pending trial.

## II. FACTUAL BACKGROUND

On November 12, 2023, the defendant was working as a sex worker in San Francisco when the Victim approached her.  The defendant asked the Victim whether he wanted a date, and he said yes and that he was looking for "everything."[1]  They discussed the price, and the Victim stated he needed to stop at an ATM.  The defendant agreed and got into the Victim's car.  After stopping at the ATM, the defendant wanted to pull over somewhere close, but the Victim said he knew a place where they could go to be alone.  The Victim drove them to Crissy Field, and the defendant felt like he was taking her "out of her element" because it was approximately 20 minutes from where he had picked her up.

Once they arrived at Crissy Field, the defendant performed oral sex.  Afterwards, the Victim said

---

[1] All quotations refer to the statements the defendant made in an interview with the FBI after her arrest.  These statements are summarized as I heard them on the recorded video interview.

he wanted more, and the defendant told the Victim that she was transgender. The Victim demanded his money back, and the defendant refused. She believed she had earned the money, explaining, "there's no money back . . . I was never giving [the money] back to him." They argued, and the Victim demanded that the defendant get out of his car. The defendant felt disrespected and refused. The defendant explained that if she had gotten out of the car, she would have been "stranded cold as fuck" and looked "dumb as fuck." She further explained that she "just really did not want to walk" home. The defendant believed that the Victim should take her back to where he picked her up, and she thought that the Victim was trying to "play her." After the defendant refused to get out of the car, the Victim began getting out of the car, and the defendant shot him. The defendant used her own gun that she kept in her purse. She explained that right before she shot him, she saw "hella different angles and ways on how I'm gonna do it."

After she shot him, the defendant debated what to do for a few minutes and decided to take his car. She pulled the Victim's body, which had fallen into the door of the car, out of the way—without ever attempting to render aid— and took his car. She drove to Kiska Road and called her mother for help. The defendant parked the Victim's car and wiped it down to eliminate fingerprints and DNA. The defendant's mother advised her that they needed to get rid of the evidence. The defendant took—and later disposed of—the Victim's backpack because she had looked in it and thought it had her DNA on it. She also disposed of the clothes she was wearing, which had blood on them, and her mother threw away the purse she was carrying. The defendant also gave her gun away to a third party because "there's a body on [it]."

Throughout the interview, the defendant returned to a few common themes. The defendant repeatedly emphasized that she felt disrespected, she did not want to be told what to do, she was taken out of her element, and she did not want to walk home in the cold. She also stated multiple times that she "was strapped" (i.e., carrying a gun) and knew that she was "capable of" handling her own business.

On November 20, 2023, the FBI executed search and arrest warrants for the defendant. When the FBI arrived, the defendant jumped out of a second-story window and fled through neighboring backyards before hiding in a neighbor's garage. The FBI subsequently located and arrested her.

**III.   LEGAL STANDARD**

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "the judicial officer finds that no condition or combination of conditions will reasonably assure the

appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove that both factors are present. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

**IV.   ARGUMENT**

The defendant's record demonstrates that she is a danger to the community and a significant flight risk. Thus, pretrial detention is appropriate.

**A.   The Defendant Is a Danger to the Community**

First, the defendant is charged with murder—one of the gravest of offenses. "There is no question that the charges [for murder and attempted murder] represent some of the most serious charges an individual can face in federal court with potential penalties that could result in Defendant serving the rest of [her] life in prison." *United States v. Arrington*, No. 1:15-CR-00033 EAW, 2023 WL 2492980, at *5 (W.D.N.Y. Mar. 14, 2023). *See also United States v. Zannino*, 798 F.2d 544, 547 (1st Cir. 1986) (murder charges are "of the gravest order"). Thus, this factor weighs heavily in favor of detention.

Second, the weight of the evidence weighs strongly in favor of detention. Most significantly, the defendant confessed to murdering the Victim. Throughout the interview, the defendant stated that she shot the Victim because she was taken out of her element and did not want to walk home in the cold. The

defendant gave numerous indications throughout the interview that she was prepared to shoot the Victim before she did so, including referring to the fact that she was carrying a gun. For example, the defendant stated, "[the Victim] want the smoke"; "I'm good though because I'm strapped . . . I'm good, like nothing going to happen to me or he's gonna get smoked period"; "he didn't think I was strapped, he probably was gonna try to fight me, I'm not fighting no man . . . you tried to play you get played". The defendant then explained her thought process at the time she shot the Victim and how she calculated the different ways to shoot him. The defendant's confession is supported by historical cell phone data which places the defendant at Crissy Field (the scene of the murder) and Kiska Road (where the Victim's car was left) at the relevant times, and by surveillance video which shows her wiping down the Victim's car before leaving in her mother's car. Thus, the weight of the evidence strongly weighs in favor of detention.

Third, her confession demonstrates that she would pose a serious danger to the community should she be released. The defendant's statements show a cold calculatedness. The defendant shot the Victim over a dispute regarding money and the fact that she did not want to walk home in the cold. She then showed no remorse throughout the interview, stating that she had debated spitting on the Victim's body and that "there's nothing to cry for at all, there's nothing." Further, the defendant never attempted to render aid and never called the police.

Fourth, the defendant has showed a willingness to destroy evidence in this case. *United States v. DeGrave*, 539 F. Supp. 3d 184, 207 (D.D.C. 2021) (detaining defendant when he had taken steps to destroy evidence because "a danger exists that, if released, [the defendant] may . . . attempt to prevent his prosecution from moving forward' because 'he has already destroyed incriminating evidence and directed others to do so as well.") (citing *United States v. Sabol*, 534 F. Supp. 3d 58, 85 (D.D.C. 2021)). The past destruction of evidence and potential to do so in the future therefore weighs in favor of detention.

Fifth the defendant also has a violent criminal record. In June 2023, the defendant sprayed "bear mace" at a crowded concert venue. Police officers attempted to place her in handcuffs, and the defendant sprayed the can of bear mace at the officer. The defendant then aggressively pulled away and attempted to further resist arrest. At least three witnesses reported that they had been sprayed with mace. This case is currently pending in San Francisco Superior Court. Additionally, the pre-bail report notes numerous contacts with law enforcement when the defendant was a juvenile. The defendant's criminal history thus

highlights her dangerousness and shows the danger she will pose to the community if released.

Overall, under the factors in 18 U.S.C. § 3142(g), it is clear that the defendant poses a danger to the community, and she should be detained pending trial.

### B. The Defendant Is a Flight Risk

The defendant has also demonstrated a willingness to evade law enforcement in order to avoid taking responsibility for her criminal conduct. In this case, when the FBI executed the search warrant at the defendant's residence, the defendant jumped out of a second story window and fled through several neighboring backyards before hiding in a neighbor's garage where she was ultimately apprehended. The defendant's behavior during the arrest indicate that she is a flight risk. *United States v. Murrington*, No. CR 13-70444-MAG KAW, 2013 WL 2443260, at *2 (N.D. Cal. June 4, 2013) ("The circumstances surrounding Defendant's June 14, 2012 arrest, where he attempted to flee and resisted arrest . . . indicate that he is a flight risk."). Additionally, the defendant is facing the prospect of a lengthy sentence if she is convicted. The statutory maximum for second-degree murder is life imprisonment. This creates a strong incentive to flee, especially since the defendant has not faced this lengthy of a sentence before. *Id.* (finding the fact that the defendant faced significant penalties indicated the defendant was a flight risk).

Lastly, the defendant has previously resisted arrest. As detailed above, just six months ago the defendant was arrested after spraying mace at a crowded venue. When the police attempted to arrest her, the defendant sprayed bear mace directly at the officer and aggressively pulled away and resisted arrest. *See e.g.*, *United States v. Murrington*, No. CR 13-70444-MAG KAW, 2013 WL 2443260, at *4 (N.D. Cal. June 4, 2013) (finding defendant was a flight risk when, among other things, defendant had previous convictions for attempting to evade arrest); *United States v. Alfonso Ramos*, No. 320MJ71799MAG1EJD, 2020 WL 7714535, at *4 (N.D. Cal. Dec. 29, 2020) (finding defendant was flight risk, in part, because he was arrested at least three times for resisting a police officer). There is thus a substantial risk that the defendant will refuse to abide by any court-ordered conditions of release and flee.

### V. CONCLUSION

The defendant is a danger to the community and a flight risk. There is no set of conditions that will reasonably ensure the safety of the community or the defendant's appearance at future court proceedings. The Court should order the defendant detained pending trial.

1  DATED:  December 5, 2023

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

*/s/ Kelsey C. Davidson*
KELSEY C. DAVIDSON
Assistant United States Attorney

UNITED STATES' DETENTION MEMO        7
23-CR-00449-SI